UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC ONYANGO, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>NICK & HOWARD, LLC d/b/a )<br>"ROCKIT RANCH PRODUCTIONS, )<br>INC", "THE UNDERGROUND )<br>CHICAGO", DOUGLAS B. WEXLER, )<br>SAMUEL J. MANELLA, )<br>Defendants. ) | Case No. 13 CV 6256<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Eric Onyango, filed his second amended complaint against defendant Nick & Howard d/b/a Rockit Ranch Productions, Inc., The Underground Chicago ("Nick & Howard"), alleging violations of 42 U.S.C. §1981, defamation, negligence, negligent retention and supervision, intentional infliction of emotional distress, invasion of privacy, and a violation of the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Onyango's claim for intentional infliction of emotional distress is also alleged against defendants Douglas B. Wexler ("Wexler"), and Samuel J. Manella ("Manella"). All defendants now move to dismiss Onyango's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Nick & Howard also move to strike certain allegations contained within the complaint. The Court requested oral arguments which were heard on May 2, 2014.

For the reasons contained herein, Nick & Howard's motion to dismiss [47] is granted. Counts I and III of Onyango's second amended complaint are dismissed. The Court declines to exercise supplemental jurisdiction over the Counts II, IV, V, VI, VII, VIII and XI as asserted against Nick & Howard. Nick & Howard's motion to strike [52] is moot. Wexler's and Manella's motions to dismiss [50, 55] are granted. Onyango's second amended complaint is dismissed with prejudice.

## Background

This action arises from two incidents that occurred at the Underground, a Chicago nightclub owned by Nick & Howard. Onyango, who is an African American attorney, visited the

1

Underground with a friend on December 24, 2012. While there, Onyango alleges a Nick & Howard promoter, Carlos Rosales, yelled hateful and inciteful words at him, including calling him a "black motherfucker," telling him he hated him, and asking him to "get out of" the Underground. (Dkt. #42, 2d. Am. Compl. ¶13.) Onyango alleges Rosales acted in part due to jealousy. (*Id*.) As a result, Onyango states that he "prematurely left [the] Underground, humiliated and embarrassed." (*Id*. at ¶14.) On January 22, 2013, Onyango complained in writing to Nick & Howard about Rosales' behavior and later received a phone message response allegedly acknowledging receipt of his complaint. (*Id*. at ¶¶15-16.)

Onyango again visited the Underground with a friend on August 2, 2013. While waiting in line to be admitted, Onyango alleges that Rosales approached the doorman and referred to Onyango as a sexual assailant. (*Id*. at ¶17.) Onyango alleges that, as a result, he was denied entrance to the nightclub and left, again, humiliated and embarrassed. (*Id*. at ¶19.)

Onyango alleges that Nick & Howard maintains an unlawful policy limiting the number of African American patrons they admit to the nightclub. On August 12, 2013, Onyango spoke with Wexler, general counsel for Nick & Howard about the alleged discriminatory practices. The following day, Onyango filed a motion to intervene in an employment discrimination lawsuit involving the Underground and attached to his motion a proposed complaint. (Dkt. #49-1, Def.'s Mot. to Dismiss, Ex. A.) The motion was denied.

Onyango also alleges that, after complaining to Wexler and prior to filing his complaint, Wexler and Rosales contacted at least two of Onyango's female friends, told them that Onyango had sexually assaulted women and asked them "to offer false statements" that Onyango had sexually assaulted them, too. (Dkt. #42, ¶¶25-29, 31.) At some point, Onyango also filed a complaint with the Federal Bureau of Investigation and a grievance with the Illinois Attorney Registration and Disciplinary Commission ("ARDC") against Wexler. Wexler hired Manella to represent him in the ARDC proceedings, who responded in writing to the allegations in a letter to the ARDC dated August 30. Onyango asserts that Manella's letter falsely and unnecessarily stated that Onyango had sexually assaulted women. (*Id*. at ¶¶33-34.)

On September 3, 2013, Onyango commenced the instant lawsuit against Nick & Howard for discrimination and retaliation in violation of 42 U.S.C. §1981, negligence, intentional infliction of emotional distress, defamation, invasion of privacy and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and moved for a

preliminary injunction. On September 12, Onyango filed an amended complaint adding Wexler and Manella to his claim for emotional distress. All defendants subsequently moved to dismiss. Onyango was granted leave to file a second amended complaint adding claims of negligent retention and supervision against Nick & Howard, and subsequently withdrew and re-filed his motion for preliminary injunction. The Court ultimately denied the motion for preliminary injunction and Onyango appealed. The Seventh Circuit affirmed and denied rehearing. During the pendency of Onyango's appeal, the parties briefed the motions to dismiss and motion to strike now before this Court. As such, the motions are ripe for ruling.

**Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This standard is met when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A motion to dismiss is decided solely on the face of the complaint and any attachments that accompanied its filing. *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). Accordingly, the court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**Discussion**

*1. Nick & Howard's Motion to Dismiss*

Nick & Howard moves to dismiss Onyango's second amended complaint in its entirety for failure to state a claim. As an initial matter, Nick & Howard disputes it is liable for Rosales' alleged conduct or defamatory remarks.[1] Significantly, in affirming this Court's denial of the motion for preliminary injunction, the Seventh Circuit stated:

> Although Onyango asserts that Rosales is an agent of defendant Nick & Howard, he did not show that the company is liable for Rosales's conduct: he has presented nothing to show that Rosales was Nick & Howard's employee or agent, that Rosales was acting within the scope of his employment, or that Nick & Howard ratified either of the alleged defamatory statements. *See Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012); *Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill.

---

[1] Nick & Howard also disputes it is liable for Manella's conduct, an argument Onyango fails to contest and therefore concedes.

3

2010); *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 280 (Ill. 2004). *Onyango v. Nick & Howard, LLC, et al.*, No. 13-3825, slip op. 3 (7th Cir. filed June 30, 2014).

Nick & Howard assert that Onyango's allegations not only fail to show that Rosales had an employment relationship with Nick & Howard, but in fact establish that Rosales acted out of jealousy and thus outside the scope of any agency relationship that might exist with Nick & Howard. Indeed, Onyango repeatedly alleges that Rosales' conduct was motivated, in part, by jealousy. (*See* Dkt. #42, ¶¶9, 13, 65, 73-76, 87-90.)

Onyango maintains that Rosales is an agent of Nick & Howard, acted with actual and apparent authority to receive and act upon sexual assault complaints, is permitted to use Nick & Howard facilities during business hours and is held out to the public as an employee because his name appears on promotional materials. The Court notes that the promotional materials attached to the complaint lists Carlos R. as the host of CIA Sundays. (Dkt. #42-1, Ex. A.) Onyango does not explain how these promotional materials establish Rosales was an employee or agent of Nick & Howard or that Nick & Howard exercised control over him. The Court finds that Onyango does nothing more than plead conclusory allegations that, even if true, fail to establish that Rosales is or acted as an agent for Nick & Howard or that Nick & Howard is liable for Rosales' actions.

*a. Section 1981 Claims*

Counts I and III allege claims of racial discrimination and retaliation against Nick & Howard pursuant to 42 U.S.C. §1981. To state a claim for discrimination under section 1981, a plaintiff must establish that (1) he is a member of a racial or ethnic minority; (2) defendants intended to discriminate against it on the basis of race or ethnicity; and (3) the discrimination deprived plaintiff of one or more rights enumerated in section 1981, such as the making and enforcing of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). "The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. §1981(b).

To the extent that Count I alleges Onyango was discriminated against on December 24, 2012, the Court reiterates that Onyango fails to establish Nick & Howard is liable for Rosales' conduct. Moreover, Onyango's claim that he was denied the right to make and enforce contracts within the Underground completely fails because he admits that he was neither denied entrance

4

to the Underground, nor that he was asked to leave the Underground on the night in question. *See Morris*, 89 F.3d at 414 (finding no section 1981 violation where plaintiffs "were denied neither admittance nor service, nor were they asked to leave the store"). Indeed, Onyango claims he voluntarily left the Underground after Rosales' alleged inflammatory remarks on December 24 and that Rosales' conduct was motivated, in part, by jealousy. (Dkt. #42, ¶¶13-14).

Count I also alleges Nick & Howard unlawfully discriminates against African Americans by limiting the number of black customers it admits to the nightclub, a practice that is carried out by its agents, contractors and employees. (*Id*. at ¶¶20-21.) The alleged discriminatory practices include: making black customers wait in line for a long time, giving "phony excuses" to black customers made to wait in long lines (including that the club is at capacity or closed for private events) while admitting Caucasian customers, charging "unreasonable" drink minimums for black customers, selectively enforcing the dress code while "making exceptions for rappers and drug dealers," harassing minority customers on the basis of race, and employing minority doormen to enforce policies in order to disguise Nick & Howard's true discriminatory intent. (*Id*. at ¶21.) Onyango alleges these actions are motivated by fear and in an attempt to discourage African Americans from returning to the nightclub. Onyango attaches to his complaint articles that generally bolster his argument that discrimination against African Americans occurs in Chicago nightclubs. However, these general, conclusory allegations of a discriminatory policy are insufficient to meet the federal pleading standard. *Iqbal*, 556 U.S. at 663-664. Additionally, Onyango fails to show which, if any, of the identified practices have been used against him. For all these reasons, Nick & Howard's motion to dismiss Count I of Onyango's second amended complaint is granted.

Count III of Onyango's second amended complaint, alleging discriminatory retaliation pursuant to section 1981, also fails. The Seventh Circuit has applied the same elements to section 1981 retaliation cases that it applies in cases involving Title VII retaliation: a plaintiff must establish that (1) they engaged in a legally protected activity; (2) they suffered an adverse employment action and (3) there is a causal connection between the two. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Adverse action must be "materially adverse to a reasonable employee," meaning, it would "dissuade [ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

Onyango fails to show a causal connection between his protected activity and the August 2 incident. Onyango alleges Nick & Howard acknowledged his January 2013 written complaint by leaving a message on his voicemail, and now argues that this fact raises the reasonable inference that Nick & Howard discussed the issue with Rosales. Nothing in Onyango's second amended complaint supports such an inference. Moreover, Onyango's second amended complaint indicates he was denied entrance to the Underground on August 2 because Rosales identified him as a sexual assailant and told the doorman not to let him in. (Dkt. #42, ¶¶17, 19.) Again, Onyango fails to establish that Nick & Howard is liable for Rosales' conduct and pleads only conclusory allegations. To the extent Onyango alleges Wexler (and Rosales) contacted his friends in retaliation, the Court finds such allegations of adverse actions insufficient to withstand a motion to dismiss. Therefore, Count III of Onyango's second amended complaint also fails and is dismissed.

*b. State Law Claims*

Pursuant to 28 U.S.C. § 1367(c), this Court declines to exercise supplemental jurisdiction over the remaining state law claims as asserted against Nick & Howard, including defamation, negligence, negligent retention and supervision, intentional infliction of emotional distress, invasion of privacy, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. In doing so, the Court declines to decide whether the Illinois Human Rights Act, 775 ILCS 5/1-101, et seq., preempts Onyango's state law claims.

*2. Wexler's and Manella's Motions to Dismiss*

Onyango's sole claim against Wexler and Manella is for intentional infliction of emotional distress. Wexler and Manella argue their alleged defamatory remarks and conduct cannot form the basis of claim for intentional infliction of emotional distress because they are absolutely privileged. Again, this issue has been aptly adjudicated by the Seventh Circuit in its ruling upholding this Court's denial of a preliminary injunction:

> Wexler and Manella cannot be liable for their alleged defamatory statements because they were absolutely privileged. Wexler made his allegedly defamatory comment during an early investigation that he conducted immediately after Onyango threatened Wexler that he would sue. *See Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 56 (Ill. App. Ct. 2014) (defamatory statements allowed during legal investigation); *Atkinson v. Affronti*, 861 N.E.2d 251, 255 (Ill. App. Ct. 2006) (defamatory statements allowed by lawyers in anticipation of litigation). And Manella made his comments during the course of an ARDC investigation. *See Lykowski v. Bergman*, 700 N.E.2d 1064, 1071 (Ill. App. Ct. 1998) (defamatory

6

statements allowed during ARDC investigations). *Onyango v. Nick & Howard, LLC, et al.*, No. 13-3825, slip op. 3 (7th Cir. filed June 30, 2014).

In accordance with this sound reasoning, the Court applies the litigation privilege here without reservation. Wexler's and Manella's motions to dismiss are therefore granted and they are dismissed as party defendants.

**Conclusion**

For all the foregoing reasons, Nick & Howard's motion to dismiss [47] is granted and motion to strike [52] is stricken as moot, Wexler's motion to dismiss [27] is granted, and Manella's motion to dismiss [55] is granted. Having twice amended his complaint and failed to state a cause of action, the Court dismisses Onyango's second amended complaint with prejudice.

IT IS SO ORDERED.

_____
Date: August 1, 2014

_____
Sharon Johnson Coleman
United States District Judge